UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


SHON D. MILLER SR. (#427562)

VERSUS                                              CIVIL ACTION

N. BURL CAIN, ET AL                                 NUMBER 12-730-JWD-SCR


**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 20, 2014.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

SHON D. MILLER SR. (#427562)

VERSUS                                        CIVIL ACTION

N. BURL CAIN, ET AL                           NUMBER 12-730-JWD-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the Plaintiff's Motion for Summary
Judgment, record document numbers 68 and 76, and the defendants'
Motion for Summary Judgment, record document number 57. Defendants
opposed the plaintiff's motion for summary judgment.[1]

Pro se plaintiff, an inmate confined at Louisiana State
Penitentiary, Angola, Louisiana, filed this action pursuant to 42
U.S.C. § 1983 against Warden Burl Cain, Asst. Warden Bruce Dodd,
Asst. Warden Kenneth Norris, Dr. Jonathan Roundtree, Dr. Hal
MacMurdo and Dr. Jason Collins.[2] Plaintiff alleged that the
defendants were deliberately indifferent to his serious medical
needs.

Plaintiff moved for summary judgment relying on a statement of
undisputed facts, his affidavit, copies of portions of the his
medical records, a copy of Louisiana State Penitentiary Nursing

---

[1] Record document number 71.

[2] Record document number 20, Amended Complaint.

Service Policies and Procedures Policy No. 62 regarding wound care, a copy of Louisiana State Penitentiary Nursing Service Policies and Procedures Policy No. 148 regarding pressure ulcer care, a copy of Department Regulation No. B-06-001, copies of correspondence from The Capital Appeals Project to Deputy Warden L. Bruce Dodd and the plaintiff, copies of Position Descriptions for Warden Burl Cain, Warden Kenneth Norris, Dr. Angelo Tarver and the Director of Medical Services.[3]

Defendants moved for summary judgment relying on a statement of undisputed facts, excerpts from the plaintiff's deposition, the affidavits of Dr. Jonathan Roundtree, Deputy Warden Bruce Dodd, Assistant Warden Kenneth Norris, Dr. Jason Collins, Dr. Hal MacMurdo and Sherwood Poret, RN/DON, and a copy of a disciplinary report for possession of contraband issued to the plaintiff on December 9, 2010.

Based on a careful review of the plaintiff's medical records, consideration of all of the summary judgment evidence, and the applicable law, the defendants' motion should be granted and the plaintiff's motion should be denied.

## I. Factual Allegations

Plaintiff alleged that he is paraplegic housed on the ward at

---

[3] Plaintiff addressed claims in his motion for summary judgment which were not raised in the Amended Complaint. Plaintiff's motion for summary judgment shall not be construed as an amendment to the complaint.

the prison infirmary.  Plaintiff alleged that he is not receiving adequate medical treatment for severe decubitus ulcers.  Generally, the plaintiff alleged that he has been provided inadequate wound care, dressing changes, medication and diet, and has been subjected to unsanitary conditions.

Specifically, the plaintiff alleged that he has hardware installed in his back which was not properly monitored.  Plaintiff alleged that he was not taken for surgery in a timely manner, and as a result the hardware cannot be removed.  Plaintiff further alleged that he was denied proper medical assessment and documentation of his decubitus ulcers, proper and timely dressing changes, proper turning, proper diet, adequate range of motion therapy, adequate pain medication and a sanitary bathing/shower area and/or assistance with bathing.  Plaintiff alleged that as a result of the defendants' actions and inactions, his decubitus ulcers have failed to heal and he has suffered severe pain.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing

that there is a genuine issue for trial.  Rule 56(c).  Speculation,
unsupported assertions, and conclusory allegations are inadequate
to defeat a motion for summary judgment.  *Hernandez v. Yellow
Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012).  The court need
only consider cited materials, but it may consider other materials
in the record.  Rule 56(c)(1)(3).

**B. Prescription**

Defendants argued that any claim which arose prior to July 27,
2011 is prescribed.

It is well settled that in § 1983 cases, federal courts look
to the most consonant statute of limitations of the forum state.
*Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573 (1989);  *Kitrell v.
City of Rockwall*, 526 F.2d 715, 716 (5th Cir.), *cert. denied*, 426
U.S. 925, 96 S.Ct. 2636 (1976).  For § 1983 cases brought in
Louisiana federal courts, the appropriate statute of limitations is
one year.  Louisiana Civil Code Article 3492; *Elzy v. Roberson*, 868
F.2d 793 (5th Cir. 1989); *Washington v. Breaux*, 782 F.2d 553 (5th
Cir. 1986); *Kissinger v. Foti*, 544 F.2d 1257, 1258 (5th Cir. 1977).
Plaintiff signed his complaint on November 16, 2012 and it was
filed on November 19, 2012.  Ordinarily, any claim the plaintiff
had against these defendants regarding acts which occurred prior to
November 16, 2011, has prescribed.

However, the holding in *Harris v. Hegmann*, 198 F.3d 153 (5th

Cir. 1999), affects this court's decision.  In *Harris*, the United States Court of Appeal for the Fifth Circuit concluded that the pendency of properly filed Administrative Remedy Procedure ("ARP") proceedings will act to toll the running of the one-year limitations period for prisoners' claims in this state.

A review of the record evidence showed that the plaintiff signed an ARP on September 22, 2011, it was received in the Warden's Office on September 23, 2011, and was assigned as ARP LSP-2011-2541.[4]  Plaintiff complained that he was denied adequate medical treatment and a double portion diet.  The ARP was denied at the Second Step on January 13, 2012.[5]

Therefore, ARP LSP-2011-2541 tolled the limitations period between September 22, 2011, the date the plaintiff signed the ARP, and January 13, 2012, the date the ARP was denied at the Second Step of the two step procedure, for a total of 112 days.

Ordinarily, all claims arising prior to November 16 , 2011 - one year before the plaintiff signed his complaint – would be prescribed.  However, when the plaintiff is given the benefit of the 112 days during which the limitations period was tolled while ARP LSP-2011-2541 was pending, the prescriptive period is calculated by counting backwards 112 days from the presumptive prescriptive date, which results in a prescription date of July 27,

---

[4] Record document number 45-3, p. 5.

[5] *Id*. at 3.

2011. Consequently, all claims which arose prior to July 27, 2011 are prescribed. This includes, but is not limited to, claims regarding the failure to treat or remove hardware from the plaintiff's back, the failure to adequately treat the plaintiff's decubitus ulcers, and any unconstitutional conditions of confinement claim which arose prior to July 27, 2011.

### C. Medical Indifference Claims

Plaintiff alleged that he was denied adequate medical treatment regarding the removal of hardware installed in his back and for severe decubitus ulcers.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

To prevail on an Eighth Amendment claim for deprivation of medical care a prisoner must prove that the care was denied and that the denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285

(1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment he felt he should have is not the issue. *Estelle v. Gamble*, *supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). Unsuccessful medical treatment does not provide a basis for a civil action under 42 U.S.C. § 1983 for violation of a constitutional right. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991), *Johnson v. Treen, supra*. Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation. *Varnado, supra*.

## 1. Removal of Hardware

Plaintiff alleged that the defendants failed to monitor his condition regarding the hardware installed in his back. Plaintiff argued that had his condition been properly monitored, the hardware could have been removed at an appropriate time.[6] Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs when they failed to monitor his condition regarding the hardware and provide him with or arrange for surgery to have the hardware removed.[7]

Plaintiff's allegation is refuted by the medical evidence contained in the record. Plaintiff's medical records showed that the plaintiff was rendered a paraplegic after sustaining a gunshot

---

[6] Record document number 20, p. 8.

[7] *Id*. at 12.

wound to his back.[8]  Plaintiff's medical records showed that after

becoming paraplegic in 1999, the plaintiff developed discitis and

osteomyelitis.[9]  In 2006, the plaintiff underwent surgery at Earl

K. Long Hospital for L3-L4 purulent discitis and psoas abscess and

had a hardware and interbody fusion done at that level.[10]  On

January 11, 2012, the plaintiff was evaluated at the Neurosurgery

Clinic at the  Interim LSU Public Hospital.[11]  Physical examination

showed no hardware protruding through the skin and the incision was

well-healed.[12]  A CT scan of the thoracic and lumbar spine was

ordered to evaluate the hardware.[13]

Plaintiff's medical records showed that on April 3, 2012, the

plaintiff underwent a consultant evaluation by the General Surgery

Service which determined that there was no surgical intervention

that could be provided.[14]  On April 7, 2012, an incision, drainage

and washout done.[15]  Initially the intent was to remove the

hardware, but that was not possible because of extensive injury and

---

[8] Record document numbers 52-1 through 52-17.

[9] Record document number 52-15, p. 91.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 47, 51.

[15] *Id.* at 3.

extensive infection.[16]  On May 16, 2012, the plaintiff was seen for post-op evaluation.[17]  At the time of examination the midline incision had a small area of opening, both fistulas were well healed and not draining.[18]  Plaintiff was referred to the General Surgery Clinic and the Infectious Disease Clinic for IV antibiotic treatment.[19]  On June 13, 2012, Dr. Gaby B. Buller referred the plaintiff to the University Emergency Room for evaluation after being found to have positive blood cultures for Methicillin-resistant Staphylococcus aureus ("MRSA").[20]  A notation made in the medical report indicated that after consulting multiple services, including Infectious Diseases and Neurosurgery, a determination was made that **no surgical intervention is warranted** (emphasis added).[21] On June 27, 2012, a notation was made in the plaintiff's medical chart that he was recently admitted to the hospital where he had an evaluation by Neurosurgery and wound washout, but the hardware was not removed because it is in a position where Neurosurgery is not able to remove the hardware.[22]

---

[16] *Id*.

[17] *Id*. at 13.

[18] *Id*.

[19] *Id*.

[20] Record document number 52-14, p. 195.

[21] *Id*. at 197.

[22] *Id*. at 147.

Plaintiff's medical records showed that the plaintiff underwent a follow-up evaluation on August 1, 2012.[23] Another notation was made that the hardware was not removed because it is in a position where Neurosurgery is not able to remove it.[24] A subsequent notation made on September 6, 2012, indicated that Neurosurgery reported inability to remove hardware due to anatomical limitations.[25]

Plaintiff's medical records showed that on January 7, 2013, the plaintiff was referred to neurosurgery for reassessment "to see if hardware can be or needs to be removed."[26] On March 11, 2013 Neurosurgery reviewed the CT from January 30, 2013, which showed interval improvement from the last CT, the hardware remained unchanged, the infection appeared resolved,[27] and there was no clear surgical indication at this point.[28]

A careful review of the plaintiff's medical records showed that the plaintiff was repeatedly referred to outside medical facilities where he received evaluation and treatment related to the hardware in his back. There is no medical evidence that the

---

[23] Record document number 52-8, p. 17.

[24] *Id.*

[25] *Id.* at 51.

[26] *Id.* at 81.

[27] *Id.* at 131 and 139.

[28] *Id.*

defendants failed to monitor the plaintiff's medical condition or that they delayed or otherwise interfered with scheduling surgery to remove the hardware from the plaintiff's back. There is no evidence in the record sufficient to create a genuine dispute for trial on the issue of whether any defendant was deliberately indifferent to the plaintiff's serious medical needs regarding the hardware in his back.

## 2. Decubitus Ulcers

Plaintiff alleged that he was denied proper medical assessment and documentation of his decubitus ulcers, proper and timely dressing changes, proper turning, proper diet, adequate range of motion therapy, adequate pain medication and a sanitary bathing/shower area and/or assistance with bathing. Plaintiff alleged that as a result of the defendants' actions and inactions, his decubitus ulcers have failed to heal and he has suffered severe pain.[29]

Specifically, the plaintiff alleged that Drs. Roundtree, Collins and McMurdo, his treating physicians, failed to ensure that the plaintiff received proper care and treatment and that the treatment was properly documented.[30] Plaintiff alleged that unidentified nurses are responsible for providing care and failed

---

[29] Record document number 20, pp. 6-8, 23-29.

[30] *Id*. at 16.

11

to provide adequate wound care and dressing changes.[31]  Plaintiff alleged that Drs. Roundtree, Collins and McMurdo failed to correct the repeated and deficient care provided by the unidentified nurses.[32]

Plaintiff alleged that Asst. Warden Dodd and Medical Director Dr. Roundtree were responsible for reviewing records to ensure that the plaintiff received proper care and treatment.[33]  Plaintiff alleged that neither Asst. Warden Dodd nor Dr. Roundtree intervened on his behalf.[34]

Plaintiff alleged that Asst. Warden Norris accepted the position of Warden over the Treatment Center even though he did not have the required medical qualifications for the position.[35] Plaintiff alleged that although Asst. Warden Norris was aware of the plaintiff's complaints regarding a denial of adequate medical treatment and prepared a response to the plaintiff's ARP, he failed to take any action to abate the inadequate medical care or the unconstitutional conditions of confinement the plaintiff complained of in his ARP.[36]

---

[31] *Id*. at 16-17.

[32] *Id*. at 17.

[33] *Id*. at 17-18.

[34] *Id*.

[35] *Id*. at 21.

[36] *Id*.

First, to be liable under § 1983, a person must either be personally involved in the acts causing the alleged deprivation of constitutional rights, or there must be a causal connection between the act of that person and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983). Plaintiff's allegation that the defendants are responsible for the actions of their subordinates is insufficient to state a claim under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

Second, to state a claim for relief in an action brought under § 1983, the plaintiff must allege and show that he has been deprived of a right secured by the Constitution or laws of the United States. Insofar as the plaintiff alleged that the defendants and other medical personnel violated prison regulations and policies related to wound management or nursing care, the claim does not give rise to a claim actionable under § 1983. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights."); *Jackson v. Cain*, 864 F.2d 1235, 1252-53 (5th Cir. 1989).

Third, a careful review of the plaintiff's extensive medical records showed that during all relevant times the plaintiff was

administered medications as prescribed[37] and received wound management as ordered.[38] Plaintiff's medical records further showed that the plaintiff's serious medical condition was closely monitored by physicians and ancillary medical personnel at the prison and also by numerous medical specialists at outside hospitals and medical facilities.[39]

Plaintiff's repeated complaints that the defendants, or other prison medical personnel they supervised, failed to precisely follow prison regulations and directives and to fully document their compliance with them at best support a state law negligence claim. The summary judgment evidence is not sufficient to create a genuine dispute for trial about whether the defendants knew the plaintiff faced a substantial risk of serious harm **and** disregarded that risk by failing to take reasonable steps to abate it. Plaintiff's dissatisfaction with the medical care he received, including his understandable dissatisfaction with the some unsuccessful treatment, is not sufficient to support a constitutional violation. Defendants are entitled to summary judgment as a matter of law.

---

[37] Record document number 52-1, pp. 47-200; record document number 52-2, pp. 1-163; record document number 52-3, pp. 129-200; record document number 52-4, pp. 1-45; 63-199; record document number 52-5, pp. 1-17.

[38] *Id*. at 165-202; record document number 52-3, pp. 1-125.

[39] Record document numbers 45-3 through 45-6, 52-1 through 52-17.

**D. Supplemental Jurisdiction**

Plaintiff sought to invoke the supplemental jurisdiction of this court. District courts may decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of State law; the claim substantially predominates over the claims over which the district court has original jurisdiction; if the district court has dismissed all claims over which it had original jurisdiction; or for other compelling reasons. 28 U.S.C. § 1367. Plaintiff's allegations of deficient and unsuccessful medical care amount to state law negligence or medical malpractice claims. The court should decline to exercise supplemental jurisdiction over such state law claims.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the Plaintiff's Motion for Summary Judgment be denied, the defendants' Motion for Summary Judgment be granted, and this action be dismissed without prejudice to any state law claim.

Baton Rouge, Louisiana, August 20, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE